UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN LUCERO, JR,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER JOHN ETTARE, et al.,<br><br>    Defendants. | Case No. 15-cv-02654-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 44 |

On May 27, 2016, the City of Berkeley and CSO Kyle Howe moved for summary judgment and former Officer John Ettare moved for partial summary judgment. Juan Lucero, Jr. opposes the motions. The Court held a hearing on the motions on July 7, 2016. For the reasons set forth below, the motions are granted in part and denied in part.

**I.     BACKGROUND**

**A.     Factual background**

On September 7, 2013, Juan Lucero, Jr. ("Plaintiff") attended BrewFest at the Pyramid Alehouse and Brewery in Berkeley. (Boskovich Decl., Ex. A, Lucero Dep. 21:17-22:1, Dkt. No. 52-1.) Plaintiff testified that he had 10 4-oz. samples of beer and was not drunk at the end of the event. (*Id.* 28:16-25, 30:11-15, 33:5-24, 40:4-10.)

Plaintiff left the brewery and walked south towards his car. (Bourgalt Decl., Ex. A, Lucero Dep. 45:4-8, Dkt. No. 45.) There was "[s]ome kind of fight or something going on" in the street near Plaintiff's car, and a guy hit Plaintiff in the front of the neck. (*Id.* 48-49.) Plaintiff fell, and his younger brother intervened to defend him. (*Id.* 53:6-8, 66:4-7.) He watched his brother and the assailant fighting, and Plaintiff and his brother were arrested. (*Id.* 66:4-7, 73:1-2.)

Plaintiff testified that an officer took him down but "[n]ot right to the ground. It was like he grabbed me and somehow we ended up by the other side of the car." (*Id.* 79:1-7.) He was slammed against the passenger side mirror, which broke. (*Id.* 75:23-76:15, 86:17-87:2.) The officer then handcuffed Plaintiff, who was arrested for public intoxication in violation of California Penal Code section 647(f). (*Id.* 90:5-23; Ettare Decl., Ex. A, Dkt. No. 47.) Plaintiff testified that he complained about his handcuffs hurting, and the officer did nothing. (Lucero Dep. 92:14-18.)

Officer Ettare then walked Plaintiff back to his patrol car. (Boskovich Decl., Ex. B. Ettare Dep. 249:20-22.) Neither Officer Ettare nor Plaintiff's brother observed any indication that Plaintiff suffered any injury to his ankle. (*Id.* 283:18-24, 307:5-12; Boskovich Decl., Ex. C, R. Lucero Dep. 88:14-19.)

Berkeley Fire paramedics examined Plaintiff with "a thorough head to toe performed w/o obvious evidence of trauma." (Lucero Dep. 164:11-25; Mettler Decl. ¶ 3, Ex. A, Dkt. No. 46.) The EMT report indicates that Plaintiff "had smell [*sic*] and admitted to drinking several beers," that he "had what appeared to be a bloody nose and cut lip," and that after thoroughly cleaning his face and wounds with water, he had minor abrasions near his right wrist and elbow. (Mettler Decl. ¶ 3, Ex. A.) The report also indicates that Plaintiff "was adamant that BFD were the culprits in 'taking him down' and 'beating his ass.'"[1] (Mettler Decl. ¶ 4, Ex. A.) Officer Ettare then transported Plaintiff to Berkeley City Jail for booking. (Lucero Dep. 97:18-98:25; Ettare Dep. 98:13-15.) Plaintiff testified that he asked Officer Ettare if he could loosen the handcuffs, but his request went unanswered. (Lucero Dep. 98:18-25.) Plaintiff also testified that he was in a lot of pain due to the handcuffs. (*Id.* 99:8-10.)

Plaintiff arrived at the jail, and he was placed in the same cell as his brother. (*Id.* 101:6-102:1.) He was not limping and had no ankle or other visible injury. (R. Lucero Dep. 86:5-10;

---

[1] In his arrest report, Officer Ettare states that Plaintiff was walking in the middle of the street, a vehicle swerved to the left of Plaintiff, and "[t]he right side rear view mirror struck the left elbow of Lucero, J[.] and fell off its mount." Ettare Decl. ¶ 2, Ex. A. "His face and arms were splattered with blood that looked like it came from his nose or lip." *Id.* In his declaration, Officer Ettare also states that he "did not use any force against Juan Lucero, and none was required." Ettare Decl. ¶ 5.

2

Boskovich Decl., Ex. G, Howe Dep. 123:6-12, 126:4-6.) Plaintiff testified that he remained handcuffed, and he again complained about the handcuffs being too tight, to no avail. (Lucero Dep. 105:1-6.) Plaintiff stated that the handcuffs were so tight that they left deep marks on his wrists for several days. (Lucero Dep. 146:12-22; Bourgault Decl., Ex. C.)

According to Plaintiff, at 18:04, CSO Howe[2] and Officer Ettare, as well another unidentified officer, grabbed him while he was still handcuffed, picked him up, and carried him into a safety cell, where the officers proceeded to punch him, put their knees in his back, and twisted his foot until he heard his right ankle snap. (Lucero Decl. ¶ 4, Dkt. No. 52; Lucero Dep. 110:1-111:25, 115:13-22, 118:2-120:24, 123:1-124:25, 126:2-128:24; Howe Decl., Ex. C, Dkt. No. 48.) Plaintiff testified that he immediately screamed in pain and told the officers that they had injured him; he remembers being punched once or twice more before losing consciousness. (Lucero Dep. 129:1-22.)

Plaintiff asserts that neither Officer Ettare nor CSO Howe did anything to summon medical assistance, and that Howe checked on him in the cell on several occasions and did nothing to assist him. (Pl.'s Opp'n at 4.) Plaintiff testified that when he regained consciousness, he noticed that he was dripping blood all over the place, and when he attempted to stand, he discovered that he could not bear weight on his right ankle. (Lucero Dep. 131:3-11, 138:1-13, 140:13-15, 144:3-145:10.)

At 20:05, an officer checked on Plaintiff and discovered that he was injured, complaining of an ankle injury. (*Id.* 143:18-24; Howe Decl., Ex. C.) Plaintiff was removed from the cell at 21:00 and taken to Alta Bates Hospital. (Lucero Dep. 147:1-150:23; Howe Decl., Ex. C.) At the hospital, x-rays indicated that Plaintiff had a fractured ankle. (Lucero Dep. 157:22-158:4.) He also had abrasions. (Bourgault Decl., Ex. B.) That was the only visit Plaintiff had for his ankle injury even though he testified that follow-up care was recommended. (Supp. Bourgault Decl., Ex. I, Lucero Dep. 180:21-181:12, Dkt. No. 54.)

///

---

[2] In his declaration, CSO Howe states that he "did not use any force against Juan Lucero, and none was required." Howe Decl. ¶ 11. It was not until June 2, 2016 that Plaintiff was able to identify CSO Howe as one of his alleged attackers. Lucero Decl. ¶ 4, Dkt. No. 52.

**B.     Procedural background**

On June 12, 2015, Plaintiff filed his complaint against the City of Berkeley, Officer John Ettare, and CSO Kyle Howe ("Defendants"). (Compl., Dkt. No. 1.) In the operative complaint, Plaintiff asserts the following causes of action: (1) a § 1983 claim for violation of his Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights, (2) a claim under § 1983 and *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) based on an alleged pattern of ongoing constitutional violations and practices by officers consisting of the use of unnecessary and excessive force against non-white persons, false arrests of non-white persons, and unequal law enforcement against non-white persons, and (3) a claim under § 1981 for race discrimination.[3] (1st Am. Compl. ("FAC") ¶¶ 22-24, ¶¶ 25-27, ¶¶ 28-32.)

On May 27, 2016, the City and CSO Howe moved for summary judgment, and Officer Ettare moved for partial summary judgment. (Defs.' Mot., Dkt. No. 44.) Plaintiff filed his opposition to the motions on June 10, 2016. (Pl.'s Opp'n, Dkt. No. 52.) Defendants filed their reply on June 17, 2016. (Defs.' Reply, Dkt. No. 53.) The Court held a hearing on the motions on July 7, 2016.

## II.     LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a

---

[3] In his opposition, Plaintiff concedes that he has no claim against CSO Howe in connection with Plaintiff's arrest or detention, no claim regarding the decision to house Plaintiff in a safety cell, no constitutional claim for the loss of his property (though he contends that property loss may be a component of his damages for his Fourth Amendment claims), and no claim for excessive force under the Fifth Amendment. Pl.'s Opp'n at 16. He also withdraws his claims under *Monell* and § 1981 as well as his claims for "constitutional violation of equal protection" and for "constitutional violation of his right to privacy." *Id.* Summary judgment is, therefore, granted as to these claims. Officer Ettare concedes that factual disputes preclude summary judgment on Plaintiff's claim for unlawful detention and arrest, and so, these claims, as against him, are unaffected by this order. Defs.' Mot. at 1.

material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery, "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,*

477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

## III.   DISCUSSION

"Section 1983 provides a cause of action against any person who, under the color of state law, abridges rights unambiguously created by the Constitution or laws of the United States. . . . [It] is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012) (internal quotations and citations omitted).  Thus, to state a claim under § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.   Plaintiff's excessive force claim

Plaintiff alleges that that Defendants violated his right to be free from excessive force when officers ignored his complaints that the handcuffs on his wrists were too tight and caused him pain,[4] when they grabbed him and slammed against his car, and when they beat him in the safety cell, where officers "twisted his ankle until it made a loud popping sound."  (FAC ¶¶ 7, 8, 11.)

The Fourth Amendment requires that officers use only such force as is "objectively reasonable" under the totality of the circumstances.[5]  *See Graham v. Connor,* 490 U.S. 386, 396-97 (1989).  This "'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (quoting *Graham*, 490 U.S. at 388).  In assessing the nature and quality of the intrusion, courts assess the type and amount of force inflicted.  *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003)

---

[4] Consistent with these allegations, Plaintiff argues in his opposition that Defendants used excessive force against him when Officer Ettare ignored Plaintiff's repeated requests to loosen his handcuffs—an issue unaddressed by Defendants in their opening brief. Pl.'s Opp'n at 8.  As Defendants have failed to address this issue in their opening brief, they have waived it.  *See Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) (declining to consider argument first raised in a reply brief).

[5] Plaintiff suggests that his claim arises under both the Fourth and Fourteenth Amendments.  *See* Pl.'s Opp'n at 16.  The Court will apply the Fourth Amendment framework in this case.

(citation omitted). When examining the governmental interests at stake, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Reasonableness is viewed from the perspective of an officer on the scene, and without the benefit of 20/20 hindsight, as "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claim because Plaintiff's allegations of excessive force are blatantly contradicted by the record. (Defs.' Mot. at 4-6.) First, Defendants highlight that Plaintiff's mug shot lacks any signs of injury to his face and any abrasions, cuts, contusions, or blood.[6] (*Id.* at 5, 6.) Second, Defendants rely on the Patient Care Report from the EMT who treated Plaintiff at the scene of his arrest, before Plaintiff was transported to jail. (*Id.* at 6.) Defendants note that the report indicates that Plaintiff had a bloody nose, a cut lip, and minor abrasions near his right wrist and elbow, contradicting Plaintiff's testimony that he had no visible injuries before he was taken to jail. (*Id.*) Third, Defendants point to photographs taken within a day or two of Plaintiff's arrest,[7] which appear consistent with the Patient Care Report, not Plaintiff's account of the events—including his testimony that the black eye he suffered showed up a day or two after his arrest. (*Id.* at 6, 7.) Fourth, Defendants point to statements by Plaintiff's brother, who testified at his deposition that Plaintiff was standing up when officers escorted him to the safety cell. (*Id.* at 7.) Fifth, Defendants contend that Plaintiff's medical records from the day of the incident document injuries that Plaintiff suffered before being taken to jail, with the exception of the ankle injury. (*Id.*)

Here, Plaintiff's version of the facts, while appearing to strain credulity as Defendants persuasively contend, still raises genuine disputes about the nature and duration of the force

---

[6] In his declaration, CSO Howe states that Plaintiff "was placed in a safety cell before being fingerprinted or photographed." Howe Decl. ¶ 7.

[7] Defendants complain about having to subpoena these photos from Plaintiff's mother, and Plaintiff complains about not having received notice of such a subpoena. The time for raising such disputes has passed.

applied. The medical records from the day of the incident document Plaintiff's injuries before he was taken to jail, but they are not dispositive as to whether Plaintiff suffered those injuries at the hands of Officer Ettare or due to the vehicle that allegedly swerved to avoid him as he was walking in the middle of the street. Plaintiff's brother's testimony that Plaintiff was upright and walking as he was being escorted to the safety cell does not negate Plaintiff's testimony that he was beaten once he was in the safety cell, though it may make it more difficult for a jury to believe Plaintiff's version of the events. The photographs of Plaintiff's injuries and his mug shot also fail to dispose of a genuine dispute of material fact as to whether Plaintiff was beaten, especially in light of the broken ankle he suffered. Thus, a reasonable juror could conclude that while injuries to Plaintiff's face and wrist are nonexistent on the photographs taken after the alleged beating, he suffered injuries to other parts of his body, such as his ankle, that were not present prior to Plaintiff being placed in a safety cell.

In their reply, Defendants argue that Plaintiff cannot establish that his ankle was not broken when he entered the jail. (Defs.' Reply at 2.) Whether Plaintiff broke his ankle prior to being taken to jail because he was stumbling around drunk or whether Plaintiff's ankle was broken when he was placed in the safety cell and allegedly beaten by officers is an issue for the jury to sort out based on whose account it finds more credible.

Though a reasonable jury could find Plaintiff's version of the events unbelievable:

> [I]f an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official. And that is as it should be. When a plaintiff proffers evidence that the official subdued her with a chokehold even though she complied at all times with his orders, while the official proffers evidence that he used only stern words, a trial must be had.

*Saucier v. Katz*, 533 U.S. 194, 216 (2001) (Ginsburg, J. concurring). Here, though some of Plaintiff's testimony may be discredited on the record before the Court, it does not mean that Defendants' version of the incident is uncontested or incontrovertible. *Cf. Scott v. Harris*, 550 U.S. 372 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredited plaintiff's claim that there was little or no actual threat to innocent bystanders); *see also Hart v. Celaya*, 548 F. Supp. 2d 789, 804 (N.D. Cal. 2008) (granting summary judgment

8

on excessive force claims where plaintiff's allegation that he was forced to kneel on hot asphalt was contradicted by photographic evidence indicating that the surface was light colored cement, not asphalt).

To the extent CSO Howe seeks summary judgment on Plaintiff's excessive force claim because Plaintiff was never able to identify him as one of his alleged attackers, Plaintiff has submitted a declaration stating that on June 2, 2016, he recognized CSO Howe as one of the individuals who participated in the alleged beating.  (Lucero Decl. ¶ 4.)[8]  It is for the jury to decide whether they believe Plaintiff on this point.

Accordingly, summary judgment on Plaintiff's excessive force claim is denied.

### B. Plaintiff's claim for delayed medical treatment

Plaintiff alleges that officers violated his 14th amendment right to adequate medical care when they delayed treatment for his broken ankle.  (FAC ¶¶ 12, 13.)

"Claims of failure to provide care for serious medical needs, when brought by a detainee . . . who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment."  *Lolli v. Cty. of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003); *see also Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010).[9]  To defeat a motion for summary judgment by individual defendants, a plaintiff must show a genuine issue of material fact as to both prongs of the deliberate indifference test: (1) whether the plaintiff was confined under conditions posing a "substantial risk of serious harm" and (2) whether the officers were deliberately indifferent to that risk.  *Clouthier*, 591 F.3d at 1244 (citing *Lolli*, 351 F.3d at 420).

---

[8] In their reply, Defendants state that no such declaration was provided.  Defs.' Reply at 8.  The declaration appears on the docket at number 52-6.

[9] In his opposition, Plaintiff writes "[t]he issue is, with respect to a pretrial detainee, what legal standard is required:  the objective standard of the Fourteenth Amendment, or the subjective standard of the Eighth Amendment."  Pl.'s Opp'n at 13.  Plaintiff further contends that "the Ninth Circuit, in *Clouthier*, *supra*, at 1241-42, brushed aside the constitutional distinctions between pretrial prisoners and imported the Eighth Amendment subjective deliberate indifference standard for failure to protect claims brought by the convicted."  *Id.* at 14.  Plaintiff's criticism notwithstanding, the Court will adhere to binding Ninth Circuit authority in this case.  In any event, even if Plaintiff were correct that he need only show "further significant injury or the unnecessary and wanton infliction of pain," Plaintiff has failed to rebut the facts showing that this standard is not met in this case.

With regard to the first prong, the existence of an injury that a reasonable physician would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and/or the existence of chronic or substantial pain are indications of a serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

The second prong of the deliberate indifference test requires a showing of: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation omitted). "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (citation omitted). A complete denial of medical care is not required to show deliberate indifference. *Lopez*, 203 F.3d at 1132. Allegations that treatment has been requested and denied because of a difference of opinion with medical staff, absent more, are insufficient to state a claim for deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Wilhelm*, 680 F.3d at 1122.

Here, Plaintiff contends that CSO Howe was aware of his serious medical need[10] and that the response to that need was inadequate. (Pl.'s Opp'n at 12, 13.) According to Plaintiff, his ankle was broken at 6:04 p.m., but medical care was delayed until 9:00 p.m., when he was removed from the cell. (*Id.*) He asserts that Defendants "must have heard that ankle snap and Mr. Lucero scream, and they must have known that he was unconscious as they removed his handcuffs and shoes." (*Id.* at 13.)

To the extent Plaintiff contends that the officers must have heard his ankle snap, such speculation is insufficient to defeat Defendants' motion. Moreover, Plaintiff's own deposition

---

[10] Plaintiff offers no citation to the record to support the assertion that CSO Howe knew that Plaintiff's ankle was broken. *See* Pl.'s Opp'n at 12, 13.

10

1    testimony undermines the remaining assertions contained in his opposition. Plaintiff testified that
2    an African American officer came to his cell, asked him if he needed medical attention, and "took
3    care of me right away, like got another officer to take me to the hospital." [11] (Lucero Dep. 143:10-
4    24, 147:10-16.) The Berkeley Police Department's Jail Safety Cell Log is consistent with this
5    testimony. (Howe Decl. Ex. C.) The log shows that at 20:05, Plaintiff was complaining of an
6    ankle injury; at 20:15, Sgt. Wilson was designated to transport Plaintiff to Alta Bates Hospital, and
7    at 21:00, Plaintiff was removed from his cell. (*Id.*) This visit to Alta Bates Hospital was the only
8    time Plaintiff received treatment for his ankle injury even though he testified that follow-up care
9    was recommended. (Supp. Bourgault Decl. ¶ 2, Ex. I, Lucero Dep. 180:21-181:12.)

10    When this evidence is viewed in the light most favorable to Plaintiff, it does not show that
11    Defendants failed to respond to Plaintiff's medical needs or that Plaintiff's injury was aggravated
12    by the alleged delay. *See Cramer v. Target Corp.*, No. 1:08-cv-01693-SKO, 2011 WL 5873401,
13    at *17 (E.D. Cal. Nov. 22, 2011) (noting that delays of longer than two hours are frequently
14    experienced in emergency rooms across the country and that such delays do not rise to the level of
15    a constitutional violation). Plaintiff has adduced no evidence to the contrary. *Cf. Schafer v.*
16    *Curry*, No. C 08-1881 RMW (PR), 2009 WL 1562957, at * 9 (N.D. Cal. June 3, 2009) (summary
17    judgment denied where plaintiff presented evidence that he was denied treatment and medication
18    for a broken foot for 7 days).

19    Accordingly, summary judgment is granted as to Plaintiff's claim for delay of medical
20    treatment.

### IV.   CONCLUSION

22    For the reasons set forth above, summary judgment is denied as to Plaintiff's excessive
23    force claim. That claim, as against CSO Howe and Officer Ettare, will proceed to trial, as will
24    Plaintiff's claim for unlawful detention and arrest against Officer Ettare. Summary judgment is
25    granted as to all other claims, i.e., Plaintiff's claim against CSO Howe in connection with

---

[11] Indeed, in his first amended complaint, Plaintiff alleges: "[a]n officer came to the cell and saw that [P]laintiff was in obvious need of medical attention, and he called for assistance. Plaintiff was quickly processed and transported to the hospital." FAC ¶ 13.

11

Plaintiff's arrest or detention, Plaintiff's claim regarding the decision to house Plaintiff in a safety cell, Plaintiff's claim for the loss of his property, Plaintiff's *Monell* claim, Plaintiff's § 1981 claim, and Plaintiff's claims for "constitutional violation of equal protection" and for "constitutional violation of his right to privacy."

**IT IS SO ORDERED.**

Dated: 07/21/16

_____
KANDIS A. WESTMORE
United States Magistrate Judge