1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6

7    JUAN LUCERO, JR.,                          Case No.  15-cv-02654-KAW
           Plaintiff,
8
     v.                                         **ORDER FOLLOWING PRETRIAL
9                                               CONFERENCE**
     JOHN ETTARE, et al.,
10
           Defendants.
11

12

13        The Court held a pretrial conference in this case on September 20, 2016.  This order

14   memorializes the Court's rulings, issued from the bench, on motions in limine, and objections to

15   witnesses, deposition excerpts, discovery responses, exhibits, proposed voir dire questions,

16   proposed jury instructions, and the proposed form of verdict.

17        **A.    Motions in limine**

18             **i.    Plaintiff's motion in limine no. 1 (Plaintiff's prior arrests and convictions)**

19        Plaintiff moves to preclude all testimony and evidence of his prior arrests and convictions,

20   on the ground that such evidence is irrelevant and will create a substantial danger of undue

21   prejudice.[1]  (Plf.'s Mots. in Limine at 3, Dkt. No. 66.)  Defendants make four arguments for why

22   evidence of Plaintiffs' prior arrests and convictions should be admissible.

23        First, Defendants argue that they should be allowed to impeach Plaintiff's testimony that he

24   had never been arrested for being drunk in public by relying on his two prior arrests for being

25   _____

26   [1] Plaintiff's arrest record includes: (1) 1997-1998 conviction for third degree burglary in Roswell,
     New Mexico; (2) 2004 arrest for violating his probation in Hayward, California; (3) 2004
27   conviction for assault with a deadly weapon in Santa Rita, California; (4) June 26, 2010 arrest for
     being drunk in public by Alameda County sheriff; and (5) July 19, 2013 arrest for disturbing the
28   peace (*nolo contendere* plea), child endangerment, and being drunk in public in Hayward,
     California.  (Defs.' Mots. in Limine at 18, Dkt. No. 69.)

1    drunk in public.  (Defs.' Opp'n to Mots. in Limine at 3, Dkt. No. 86.)  Plaintiff argues that

2    evidence of prior arrests is irrelevant in this case.[2]  Relevant evidence is any evidence that has any

3    tendency to make a fact that is of consequence to the determination of the action more or less

4    probable than it would be without the evidence.  Fed. R. Evid. 401.  Here, a significant issue is the

5    credibility of the parties, and Plaintiff could be impeached if he testified that he was arrested for

6    being drunk in public by cross-examining him about his being arrested for being drunk in public.

7        The Court finds, however, that the evidence of the prior arrests for being drunk in public

8    should be excluded because of the risk of unfair prejudice.  The Court has discretion "to exclude

9    relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair

10   prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

11   presenting cumulative evidence."  Fed. R. Evid. 403.  Here, there is a significant risk of unfair

12   prejudice that the jury will use the arrests for a purpose other than impeachment, such as believing

13   Plaintiff is a bad actor or that he was more likely to be drunk when he was arrested on September

14   7, 2013, thus supporting Defendants' version of events.  The Court finds that the risk of undue

15   prejudice substantially outweighs the impeachment value of the prior arrests.

16       Second, Defendants argue that the prior arrests show that Plaintiff has "prior experience

17   being arrested, booked and jailed, and therefore could have made up his claims of what happened

18   in this case."  (Defs.' Opp'n at 3-4; *see also* Defs.' Mots. in Limine at 19, Dkt. No. 69.)  The Court

19   rejects this argument.  Defendants do not explain why Plaintiff's prior arrests would help him

20   "make up" his version of the events, especially when none of the prior arrests were made by the

21   Berkeley Police Department.  Similarly, Defendants do not explain why the prior arrests would

22   suggest that his version of the events were actually based on a prior arrest or jailing.  (*See* Defs.'

23   Mots. in Limine at 19.)  In short, Plaintiff would have no knowledge of the Berkeley Police

24

25   _____
     [2] Plaintiff also argues that "arrests are not admissible because they are not convictions."  (Plf.'s
26   Mots. in Limine at 5.)  Plaintiff relies on *United States v. Garcia*, where the Fifth Circuit found
     that "It is perfectly clear that normally the mere existence of an arrest is not admissible to impeach
27   the credibility of a witness."  531 F.2d 1303, 1306 (5th Cir. 1976).  *Garcia* did not hold that arrests
     are *never* admissible, as Plaintiff suggests; instead, the Fifth Circuit went on to find that the arrest
28   evidence could be admissible to impeach the credibility of a witness.  *Id.*

Department's procedures based on his prior arrests to then "make up" his version of events, and any probative value would be minimal at best.

Third, Defendants argue that Plaintiff's prior arrests and convictions are permissible to show that Plaintiff has bias and prejudice against law enforcement, thus evidencing a motive for filing the instant suit. (Defs.' Opp'n at 4; Defs.' Mots. in Limine at 19.) In support, Defendants rely on *Heath v. Cast*, where the Ninth Circuit found that the plaintiff's prior misdemeanor convictions were probative of the plaintiff's bias against the Newport Beach police and of his motive for bringing the action. 813 F.2d 254, 259 (9th Cir. 1987). *Heath* is not applicable here. As an initial matter, *Heath* concerned "prior misdemeanor convictions resulting from arrests made by the *same* police agency," whereas here every prior arrest was made by a police department other than the Berkeley Police Department. 813 F.2d at 259 (emphasis added); *see also Green v. Baca*, 226 F.R.D. 624, 657 (C.D. Cal. 2005) (rejecting the Los Angeles Sheriff's Department's argument that the plaintiff's prior arrests were relevant to show bias because the plaintiff was never arrested by the Los Angeles Sheriff's Department). Further, unlike in *Heath*, where the parties actually stipulated that Plaintiff was biased towards the officers, *see* 813 F.2d at 259, here there is no other evidence presented by Defendants that Plaintiff was biased towards Defendants in this case. *Compare with Gallagher v. City of W. Covina*, No. CV 00-377 CBM (RNB), 2002 WL 1770761, at *4 (C.D. Cal. July 29, 2002) (granting motion in limine to preclude prior convictions to show bias because there was no stipulation that the plaintiff was biased towards the same officers and there was no other evidence of bias). Because the prior arrests were not made by Defendants in this case or even the Berkeley Police Department, and because there is no other evidence of bias, the Court concludes that the prior arrests and convictions are not admissible to show bias.

Finally, Defendants argue that the prior arrests are relevant to showing that Plaintiff's emotional distress is "exaggerated." (Defs.' Opp'n to Mots. in Limine at 4; Defs.' Mots. in Limine at 19.) In *Peraza v. Delameter*, the Ninth Circuit found that evidence of *subsequent* encounters with the police and difficulties in school could be introduced for the issue of damages. 722 F.2d 1455, 1457 (9th Cir. 1984). Here, Defendants seek to introduce evidence of *prior* arrests.

Moreover, the facts of the prior arrests are different from the instant case, where Plaintiff is not only asserting false arrest but that he was the victim of excessive force including being beaten by officers while in custody. It is therefore unclear why the prior arrests would have any probative value as to Plaintiff's emotional distress in this case. Even if there was any probative value, the probative value is minimal given the lack of similar facts between the prior arrests and the instant case, while the potential for unfair prejudice is significant as prior arrests may suggest to a jury that Plaintiff is a bad actor. *Compare with Torres v. City of Santa Clara*, Case No. 5:13-cv-1475-PSG, 2014 WL 4145509, at *2 (N.D. Cal. Aug. 20, 2014) (rejecting use of prior arrests to show damages calculations because case did not involve subsequent events, a lack of similar facts limited probative value of the arrest history, and the unfair prejudice from prior bad act evidence was significant).

The Court therefore GRANTS Plaintiff's first motion in limine.

### ii. Plaintiff's motion in limine no. 2 (Dr. Gustin's expert testimony)

Plaintiff moves to preclude Defendants' expert, Dr. Gustin, from testifying as to Plaintiff's credibility. (Plf.'s Mots. in Limine at 6.) Dr. Gustin is an emergency medicine doctor who will testify as to whether the evidence supports Plaintiff's version of events. (Defs.' Opp'n to Mots. in Limine at 4.) Plaintiff argues that while Dr. Gustin may point out inconsistencies, he should not be permitted to state that Plaintiff or any other witness is untruthful. (Plf.'s Mots. in Limine at 7.) Defendants respond that Dr. Gustin will not offer an opinion as to Plaintiff's truthfulness, but that he should be allowed to opine on contradictions between the medical records and Plaintiff's deposition testimony, and to give his opinion on the likely cause of Plaintiff's injuries. (Defs.' Opp'n to Mots. in Limine at 4-5.)

At the hearing, the Court confirmed that Defendants did not intend to ask Dr. Gustin if Plaintiff is being untruthful. Thus, the Court GRANTS Plaintiffs' second motion in limine, and will instruct Dr. Gustin not to opine as to Plaintiff's truthfulness. This does not preclude Dr. Gustin from opining on contradictions between the medical records and Plaintiff's testimony, and whether the medical records support Plaintiff's testimony.

### iii. Defendants' motion in limine no. 1 (conditions of the safety cell)

4

Defendants move to prohibit Plaintiff "from introducing any evidence or testimony about the conditions of the safety cell in the Berkeley City jail." (Defs.' Mots. in Limine at 1, Dkt. No. 1.) Defendants contend that this evidence is irrelevant because Plaintiff conceded he has no claim regarding the decision to house Plaintiff in a safety cell, and that the Court granted summary judgment on the claim. (*Id.* at 1; MSJ Ord. at 4 n.3, Dkt. No. 59.) Further, any probative value of the safety cell's conditions will be substantially outweighed by unfair prejudice to Defendants because "neither of them was involved in the decision to place plaintiff in a safety cell," and will also be a "waste of time on collateral issues by forcing them to defend plaintiff's placement in the safety cell, a decision which neither Defendant made." (Defs.' Mots. in Limine at 3.) Plaintiff responds that the conditions are relevant because it was part of Plaintiff's observations after the alleged beating in the safety cell, which goes to his ability to accurately perceive his surroundings. (Plf.'s Opp'n to Mots. in Limine, Dkt. No. 82 at 1-2.) Further, Plaintiff has argued that he had no ankle injury when he was taken to the safety cell, but suffered an ankle injury while in the safety cell. (*Id.* at 1.) Testimony about the safety cell conditions is therefore relevant because the cell is constructed with a softer material and lacks fixtures or furniture, thus "lessen[ing] the possibility that plaintiff injured himself in that cell." (*Id.* at 2.)

The Court finds that the condition of the safety cell is relevant. Here, Plaintiff's observations are part of his narrative of what occurred in the safety cell, specifically the aftermath of the alleged beating. The conditions of the safety cell are also highly relevant to whether Plaintiff could have injured himself in the safety cell, which would support his claim that his injuries were caused by being beaten.

The Court also concludes that this evidence should not be excluded. Defendants have not shown that the evidence is prejudicial, as their only argument is that neither Defendant made the decision to move Plaintiff to a safety cell. (*See* Defs.' Mots. in Limine at 3.) That argument goes to relevance, not prejudice. Further, the Court disagrees that it is a collateral issue or a waste of time, as the safety cell conditions are probative of Plaintiff's explanation of how his ankle was broken. The Court DENIES Defendants' first motion in limine. Plaintiff is not, however, to discuss the safety cell conditions in the context of punishment.

### iv. Defendants' motion in limine no. 2 (criminal charges from the September 7, 2013 citation)

Defendants request that the Court prohibit Plaintiff from introducing evidence that his September 7, 2013 citation was dismissed. (Defs.' Mots. in Limine at 4.) Plaintiff does not oppose, provided that the Court agree with the parties' stipulation to issue a jury instruction that the jury is not to consider whether there was a criminal case filed or its outcome. (Plf.'s Opp'n to Mots. in Limine at 3; Joint Pretrial Statement at 5, Dkt. No. 74.) The Court will issue the stipulated jury instruction, and therefore GRANTS Defendants' second motion in limine.

### v. Defendants' motion in limine no. 3 (Defendant Howe's police academy experience)

Defendants request that the Court exclude evidence of Defendant Howe's attendance at the police academy and his decision not to pursue a police officer position. (Defs.' Mots. in Limine at 7.) Over a year after the September 7, 2013 events, Howe attended the Police Academy, but failed to pass after twice failing a scenario. (Howe Dep. at 36:10-20, Dkt. No. 70, Exh. C.) The two scenarios concerned a robbery and burglary, and Defendant Howe explained that he was told that he needed to communicate better with dispatch and his fellow officers, that his spatial relation to the actual scene was too far away, that his approach could have been better, and that his investigation could have been better. (*Id.* at 37:9-12, 20-24, 38:8-11.) Howe voluntarily left the Berkeley Police Department in April 2015. (*Id.* at 39:22-40:1.)

Defendants argue that Howe's participation at the police academy is irrelevant to Plaintiff's excessive force claim because the academy attendance was a year after the September 7, 2013 events, and because his reasons for failing were not related to his duties as a jailor. (Defs.' Mots. in Limine at 8.) Plaintiff opposes, contending that it is evidence of "poor judgment." (Plf.'s Opp'n to Mots. in Limine at 3.) He suggests that Howe's failure to not get close enough to the scene is "indicative of fear," and that "fear in a beating case is always in issue." (*Id.*) Further, the inability to complete the investigation is probative of Howe's ability to "perceive and report." (*Id.*)

The Court agrees with Defendants that Howe's police academy experience is not relevant. The reasons Howe did not pass the police academy were related to his investigatory and communication skills with fellow officers. By contrast, Plaintiff accuses Howe of forcefully

taking him into the safety cell and deliberately beating him. (Plf.'s Trial Brief at 2, Dkt. No. 65.) As Defendants point out, this alleged intentional use of excessive force is not "a question of 'judgment,' related to whether he correctly analyzed certain robbery scenarios in the police academy." (Defs.' Mots. in Limine at 9.) Plaintiff also does not explain why fear would be an issue where a person deliberately participates in the beating of another individual. In short, Plaintiff has failed to show why Howe's police academy experience makes it more or less likely that he participated in beating Plaintiff.

Even assuming the Howe's police academy experience was relevant, its minimal relevance is outweighed by unfair prejudice, namely the risk of giving the jury a negative impression of Howe for reasons unrelated to the facts of this case. The Court therefore GRANTS Defendants' third motion in limine.

### vi. Defendants' motion in limine no. 4 (prior citizen complaints)

Defendants move to exclude evidence of prior citizen complaints against Defendant Ettare, none of which were sustained. (Defs.' Mots. in Limine at 9.) Neither party explains what these complaints concern. Defendants argue that the complaints are not relevant because they were not sustained, and that they would be unduly prejudicial by suggesting that Ettare committed prior wrongdoing. (*Id.* at 10-11.) Defendants also contend that the complaints should be excluded as prior bad acts under Rule 404(b), as a subsequent remedial measure under Rule 407, and as hearsay under Rule 802. (*Id.* at 11-12.) Plaintiff opposes on the ground that evidence of other wrongs or acts are admissible under Rule 404(b) to prove motive, intent, plan, knowledge, or absence of mistake or accident, although Plaintiff does not specify how such matters will be proven by the complaints at issue in this case. (Plf.'s Opp'n to Mots. in Limine at 4.) Further, Plaintiff contends the complaint itself is not a subsequent remedial measure under Rule 407.

As an initial matter, the Court disagrees with Defendants' contention that the complaints should be excluded as a subsequent remedial measure under Rule 407. The Advisory Committee Notes make clear that Rule 407 "applies only to changes made after the occurrence *that produced the damages giving rise to the action*." Fed. R. Civ. P. 407 advisory committee's note to 1997 amendment. In short, Rule 407 does not apply to a subsequent remedial measure that is unrelated

to the challenged harm in the instant case.[3]  The Court finds, however, that given these complaints were unsustained, the probative value is fairly limited while the prejudicial value significant, as the filing of a complaint could suggest Ettare acted badly even if the complaint was ultimately found to be without merit.  There would also be a risk of wasting time on a collateral issue of what resulted from the complaints, such as the investigation and why the complaint was unsustained.  Further, if Plaintiff seeks to introduce the complaint for the truth of the matter contained therein, a hearsay issue will likely arise.  The Court GRANTS Defendants' fourth motion in limine.

### vii.    Defendants' motion in limine no. 5 (introduction of lost property)

Defendants move to exclude evidence regarding Defendant Ettare losing Plaintiff's cell phone and wallet.  (Defs.' Mots. in Limine at 12.)  Defendants argue that this evidence is irrelevant because there is no claim for lost property in this case, and that lost property is not a proper measure of damages for an unlawful arrest cause of action.  Rather, Defendants contend that Plaintiff can only recover his lost property through a tort claim per the California Tort Claims Act.  (*Id.* at 13.)  Plaintiff responds that he would not have lost his wallet and cell phone if not for the arrest, and that it therefore goes to damages under his § 1983 claim.  (Plf.'s Opp'n to Mots. in Limine at 6.)

In general, "[a] plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations."  *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988).  Thus, "[t]he victim of the constitutional deprivation is entitled to compensation for economic harm, pain and suffering, and mental and emotional distress that results from the violations."  *Id.*  Plaintiff's cell phone and wallet were taken and lost during the course of the arrest, and thus constitute economic harm resulting from the alleged unlawful arrest.  (*See* Ettare

---

[3] Defendants' citation to *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986), is not contrary.  *Maddox* concerned statements made during the City's investigation following the incident at the center of the lawsuit, namely the officer's use of a choke hold.  *See id.* at 1411, 1417.  Thus, the investigation was a remedial measure taken after the incident itself, not a wholly unrelated incident, as is the case here.  Moreover, *Maddox* is inapposite as the Ninth Circuit found that "[t]he Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident," but was silent as to any actual complaint itself.  *Id.* at 1417.

Dep. at 328:1-21, Dkt. No. 70, Exh. B.) Defendants' cases concern whether a plaintiff may bring a standalone § 1983 claim for lost property, not whether lost property is an appropriate measure of damages for a § 1983 claim that is not based on lost property. *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) ("a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy"); *Howard v. Dalisay*, No. C 10-5655 LB, 2013 WL 5645193, at *4 (N.D. Cal. Oct. 16, 2013) (dismissing § 1983 claim based on stolen valuables). Because evidence of the lost cell phone and wallet goes to recoverable economic damages, the Court DENIES Defendants' fifth motion in limine. Defendant is not precluded from arguing that Plaintiff cannot be compensated without a finding of unlawful action.

> ### viii. Defendants' motion in limine no. 6 (code of silence)

Defendants move to exclude evidence implying there was a cover up or conspiracy, and to prevent Plaintiff from using language such as "code of silence," "wall of silence," "wall of blue," "blue wall," and "green wall." (Defs.' Mots. in Limine at 15.) Plaintiff does not oppose the request to exclude language such as "code of silence," but argues that he should be able to point out evidence that "raise[s] an inference that the officers are covering for one another." (Plf.'s Opp'n to Mots. in Limine at 7.)

Absent evidence, the Court agrees that Plaintiff may not suggest there was a cover up or conspiracy, with or without using language such as "code of silence." Courts have generally found such language and evidence to be irrelevant to whether a defendant used excessive force against a plaintiff, in addition to being highly prejudicial. *Baltimore v. Haggins*, No. 1:10-cv-931-LJO-JLT (PC), 2013 WL 4676455, at *6 (E.D. Cal. Aug. 30, 2013); *Engman v. City of Ontario*, No. EDCV 10-284 CAS (PLAx), 2011 WL 2463178, at *4 (C.D. Cal. June 20, 2011) (finding that the plaintiff could argue that the defendants' version of the facts is not credible, but that plaintiff's witnesses could not use terms such as "code of silence" or "wall of blue"); *Jackson v. Mendez*, Case No.: 1:11-cv-80-BAM (PC), 2015 U.S. Dist. LEXIS 154717, at *8-9 (E.D. Cal. Nov. 13, 2015) (finding that evidence concerning a conspiracy by officers to cover up the actions of other officers in excessive force case is irrelevant to the issues in the case and that development of the

issue would consume an undue amount of time and confuse and mislead the jury). Further, inconsistency between Plaintiff's and Defendants' versions of the evidence is insufficient evidence of a conspiracy; "[t]hough Defendant may offer the testimony of other officers on the scene, the fact that their versions disagree with Plaintiff's—assuming they do—is insufficient to justify introduction of evidence that the testimony is due to a code of silence." *Baltimore*, 2013 WL 4676455, at *6.[4] The Court therefore GRANTS Defendants' sixth motion in limine. This ruling does not preclude Plaintiff from pointing out inconsistencies or arguing that witnesses are biased or not truthful because of their work relationship or friendship with Defendants. *See id.* at *7; *Jackson*, 2015 U.S. Dist. LEXIS 154717, at *9.

### ix. Defendants' motion in limine no. 7 (Plaintiff's prior arrests and convictions)

Defendants move to allow Defendants to introduce evidence of Plaintiff's prior arrest and conviction history. (Defs.' Mots. in Limine at 18.) For the reasons discussed as to Plaintiffs' first motion in limine, the Court DENIES Defendants' seventh motion in limine.

### B. Objections to exhibits

#### i. Plaintiff's objections to Defendants' exhibits

##### a. Defendants' proposed exhibit A-1

Defendants' proposed exhibit A-1 is the "Detail Call for Service Report" from September 7, 2013, which includes three columns: "create time," "created by," and "narrative." Plaintiff objects to the exhibit as being irrelevant, hearsay, and confusing and misleading to the jury. (Plf.'s Objections to Exhibits at 1, Dkt. No. 87.) The Service Report is itself a business record, and the statements contained within are present sense impressions in which the reporting witnesses to the fight are providing a live account of what is happening. Fed. R. Evid. 803(1), (6); *compare with Harrigan v. Marion Cty.*, 6:11-cv-06174-SI, 2013 WL 5274407, at *3 (D. Ore. Sept. 18, 2013). The Service Report is also admissible for a non-hearsay purpose by going to Defendant Ettare's state of mind when he reached the scene, as he had heard from a dispatcher that one of the

---

[4] While Plaintiff cites to *Ting v. United States*, 927 F.2d 1504, 1515-16 (9th Cir. 1991), the Court notes that Plaintiff cites to the dissent, and that even the dissent did not suggest that evidence of a cover-up could be introduced at a trial, as *Ting* was disposed of at summary judgment. (*See* Plf.'s Opp'n to Mots. in Limine at 8.)

suspects involved in the fight was wearing an Oakland Raiders jersey, which Plaintiff was also wearing. (*See* Defs.' Trial Brief at 2, Dkt. No. 68.) This also goes to relevance. Further, the Court finds that the Service Report is not confusing or misleading, and Plaintiff does not explain otherwise. Plaintiff's objection is OVERRULED.

### b. Defendants' proposed exhibit A-2

Defendants' proposed exhibit A-2 is the "Case Report" from September 7, 2013. Plaintiff objects to the exhibit as being hearsay and improper opinion, and under Rule 403. (Plf.'s Objections to Exhibits at 1-2.) Plaintiff argues that opinions of the writer are not admissible under the business records exception. Even if the business records exception does not apply, however, the Ninth Circuit has "held that district courts should admit such law-enforcement reports, if at all, only under the public-records exception contained in Federal Rule of Evidence 803(8)." *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086-87 (9th Cir. 2000); *see also Neumeyer v. Wawanesa Gen. Ins. Co.*, No. 14cv181-MMA (RBB), 2015 WL 1924981, at *23 (S.D. Cal. Apr. 24, 2015) ("A police report, including the police officer's statements and observations, are admissible in civil cases under the public records hearsay exception"); *Blanton v. Cty. of Sacramento*, No. 2:09-cv-1832-MCE-CKD, 2012 WL 2798920, at *1 n.4 (E.D. Cal. July 9, 2012) ("The police officers' statements and observations recorded in a police report are admissible . . . under the public-records hearsay exception contained in Fed.R.Evid. 803(8)").

Although the case report may be admissible under the public records hearsay exception, the Court finds that such evidence should be excluded under Rule 403 as being cumulative, as Defendant Ettare will be called as a witness and can testify about the matters that are contained in the report. *See Gilliam v. Cty. of L.A.*, 37 F.3d 1505, 1994 WL 551508, at *2 (9th Cir. 1994) (district court did not abuse discretion in refusing to admit the police report of the incident because the police report was "cumulative of the extensive direct and cross examination of the deputies"). The police report may be used to refresh Officer Ettare's memory, but is otherwise cumulative in light of Defendant Ettare's testimony. *See Velasquez v. City of Santa Clara*, Case No. 5:11-cv-3588-PSG, 2014 U.S. Dist. LEXIS 33004, at *1 (N.D. Cal Mar. 11, 2014) (granting motion in limine to prohibit the introduction of police reports as documentary evidence but allowing a

witness to use the report to refresh memory).  The Court therefore SUSTAINS the objection.

c.  Defendants' proposed exhibit A-5

Defendants' proposed exhibit A-5 is 911 calls from September 7, 2013, in which witnesses to the fight are describing the fight to 911.  Plaintiff objects to the exhibit as being hearsay and irrelevant.  The 911 calls are not hearsay because they are a present sense impression.  *Harrigan*, 2013 WL 5274407, at *3 ("The MacLeay staff member's statements on the 911 call describe an ongoing emergency incident that she was personally witnessing, and therefore, are admissible under the FRE 803(1) exception to the hearsay rule").  As for relevance, at the hearing Defendants explained that the 911 calls directly contradict Plaintiff's explanation of the fight and events immediately preceding his arrest, which impacts Plaintiff's credibility.  The Court finds that the 911 calls are relevant, and that its relevance is not substantially outweighed by potential for confusion or prejudice.

d.  Defendant's proposed exhibit A-6

Defendant's proposed exhibit A-6 is Plaintiff's consolidated arrest report.  Plaintiff objects to information that indicate a prior arrest and information regarding a court appearance, including the charges, court date, and bail.  (Plf.'s Objections to Exhibits at 2.)  At the hearing, Plaintiff stated that he is fine with redacting the information regarding a court appearance, which Defendants agreed to do.  Thus, Plaintiff's objection is SUSTAINED.  After the proposed redactions, however, there is no information in the exhibit that is in dispute.  The Court finds this exhibit to be cumulative and prejudicial under Rule 403.  Therefore, the entire document is excluded.

e.  Defendant's proposed exhibit A-10

Defendant's proposed exhibit A-10 is Roberto Lucero's Detainee Confinement Record.  Plaintiff objects on the ground that the DCR is irrelevant, hearsay, violates the privacy rights of Mr. Lucero, and under FRE 403.  (Plf.'s Objections to Exhibits at 2.)  The exhibit is relevant to Plaintiff's credibility as Mr. Lucero's answer in the DCR regarding whether he was in a physical altercation immediately before or subsequent to his arrest contradicts Plaintiff's version of events.  The exhibit is not hearsay to the extent it is used against Mr. Lucero as a prior inconsistent

statement. Further, Mr. Lucero's privacy rights are not improperly invaded because his arrest will already be discussed during the trial. Plaintiff's objection is OVERRULED.

### f.   Defendant's proposed exhibit A-11

Defendant's proposed exhibit A-11 is Plaintiff's citation and Notice to Appear. Plaintiff objects that the citation is hearsay, improper opinion, and that its relevance is outweighed by prejudice. (Plf.'s Objections to Exhibits at 2.) At the hearing, Defendants agreed to exclude the exhibit. Plaintiff's objection is SUSTAINED.

### g.   Defendant's proposed exhibit A-12

Defendant's proposed exhibit A-12 is Roberto Lucero's citation and Notice to Appear. Plaintiff objects that the citation is hearsay, improper opinion, and that its relevance is outweighed by prejudice. (Plf.'s Objections to Exhibits at 3.) The exhibit has no apparent relevance to what occurred to Plaintiff, as it is limited to Plaintiff's brother and does not relate to Plaintiff in any way. Plaintiff's objection is SUSTAINED.

### h.   Defendant's proposed exhibit A-13

Defendant's proposed exhibit A-13 is Roberto Lucero's consolidated arrest record. Plaintiff objects that it is irrelevant, hearsay, improper opinion, violates the privacy rights of Mr. Lucero, and that its relevance is outweighed by prejudice. (Plf.'s Objections to Exhibits at 3.) At the hearing, Defendants stated they only wanted to admit the photograph of Mr. Lucero, which Plaintiff did not object to. The Court, however, does not see how the photograph of Plaintiff's brother in the consolidated arrest record is relevant to its defense. Plaintiff's objection is therefore SUSTAINED.

### i.   Defendant's proposed exhibits A-15 and A-16

Defendant's proposed exhibit A-15 is a recording of Roberto Lucero's phone call with Mrs. Lucero, while A-16 is the transcript of the call. Plaintiff objects that these exhibits are irrelevant, hearsay, violates the privacy rights of Mr. and Mrs. Lucero, and that it is a waste of time, misleading, and confusing to the jury. (Plf.'s Objections to Exhibits at 3.) The majority of the phone call and transcript are not hearsay because they are describing an event as it occurred, namely that Mr. Lucero was in jail and needed someone to pick him up. *See* Fed. R. Evid. 803.

13

Plaintiff fails to identify what privacy rights would be violated, and the fact of Mr. Lucero's arrest will already be discussed at the trial. At the hearing, Defendants explained that the phone call is relevant to the credibility of the Luceros and the timeline of Plaintiff's version of events. The Court finds that this probative value outweighs any prejudicial effect. Plaintiff's objection is OVERRULED. Any reference to Mrs. Lucero as drunk, however, is prejudicial and must be redacted.

### j. Defendants' proposed exhibits A-19 and A-20

Defendant's proposed exhibit A-19 is the contract between the City of Berkeley and Crime Scene Cleaners, Inc., and its proposed exhibit A-20 is invoices from Crime Scene Cleaners, Inc. for September 2013. Plaintiff objects that these exhibits are irrelevant, incompetent, and potentially misleading, confusing, and a waste of time. At the hearing, Defendants explained that Plaintiff had claimed he had bled everywhere in the safety cell, but the invoices show that Crime Scene Cleaners was never called to clean up blood from a safety cell in September. Thus, the invoices contradict Plaintiff's version of events. The Court finds the exhibits are relevant and will be introduced by the custodian of records for the City of Berkeley. A foundation will, however, need to be laid that no other cleaning service was ever used to clean cells or that jail staff did not clean cells, as the fact that Crime Scene Cleaners was not called does not necessarily mean there was no clean up. Assuming such a foundation can be laid, Plaintiff's objection is OVERRULED.

### k. Defendants' proposed exhibits A-21, A-22, A-23, A-24, A-29

Defendants' proposed exhibits A-21 through A-24 and A-29 concern police records related to Plaintiff's prior arrests. For the same reasons as discussed as to Plaintiff's first motion in limine, Plaintiffs' objections are SUSTAINED.

### l. Other Exhibits

There are a number of exhibits whose relevance is unclear at this time. Defendants should be prepared to discuss the relevance of the following exhibits on June 26, 2017, prior to jury selection: Exhibit A-8 (Alameda County Sheriff's Department Prisoner Property Receipt for Plaintiff's property), A-25 (photo of Defendant Howe), A-26 (photo of CSO McDaniel), and A-27 (photo of 107.7 Bone Beer fest participants).

14

ii.     **Defendants' objections to Plaintiff's exhibits**

a.   Plaintiff's proposed exhibits 1-7

Plaintiff's proposed exhibits 1 and 2 consist of photos of his injuries.  Plaintiff's proposed exhibits 3-6 consist of medical bills of his treatment.  Plaintiff's proposed exhibit 7 consists of x-rays of his ankles.  Defendant objects to each of these exhibits because they were not disclosed pursuant to Federal Rule of Civil Procedure 26(a).  (Defs.' Evidentiary Objections at 1-3, Dkt. No. 88.)

Rule 26(a) requires that a party provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ."  "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (internal quotation omitted).  "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless."  *Id.*  "In determining whether this sanction should be imposed, the burden is on the party facing the sanction . . . to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless."  *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008).  Defendants are therefore "not required to articulate how they would be prejudiced by" Plaintiff's failure to timely disclose.

At the hearing, Plaintiff explained that the failure to comply was harmless because Defendants had previously used the photographs in their summary judgment motion, and Defendants also had the medical records from the subpoenas.  The Court therefore finds that Plaintiff has adequately explained that the failure to comply with Rule 26(a) was harmless.  Because Defendants offer no other reason for excluding this evidence, Defendant's objection to Exhibit 1-7 is OVERRULED.

b.   Plaintiff's proposed exhibits 8-9

Plaintiff's proposed exhibit 8 is Dr. Jimmy D. Cardoza's CV, and his proposed exhibit 9 is

1    Dr. Kelmenson-Chau's CV.  Defendants object to these exhibits because they contend both experts

2    were not properly disclosed under Rule 26(a)(2)(C).  (Defs.' Evidentiary Objections at 3-4.)  Rule

3    26(a)(2)(C) states that if an expert is not required to provide a written report, the disclosure must

4    provide "(i) the subject matter on which the witness is expected to present evidence under Federal

5    Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the

6    witness is expected to testify."

7         The Court finds that Plaintiff has failed to provide a summary of the facts and opinions to

8    which these experts will testify.  Instead, Plaintiff simply states that these experts "will testify as to

9    Plaintiff's physical condition on or about the date of the incident," and that all parties possess the

10   medical records.  (Dkt. No. 88-1 at 11.[5])  This is not sufficient to satisfy Plaintiff's disclosure

11   requirements, especially in light of Rule 26(a)(2)(C)'s "goal of increasing efficiency and reducing

12   unfair surprise."  *Carrillo v. B & J Andrews Enters., LLC*, No. 2:11-cv-1450-RCJ-CWH, 2013 WL

13   394207, at *6 (D. Nev. Jan. 29, 2013); *Robinson v. HD Supply, Inc.*, 2:12-cv-604 GEB AC, 2013

14   WL 316009, 2013 WL 3816009, at *4 (E.D. Cal. July 19, 2013).  Further, the Court finds that the

15   production of medical records is insufficient to satisfy Rule 26's disclosure requirements, as

16   Defendants should not have the burden of "sif[ting] through medical records in an attempt to

17   figure out what testimony may be given by the identified physicians."  *Carillo*, 2013 WL 394207,

18   at *6; *Flonnes v. Prop. & Cas. Ins. Co. of Hartford*, 2:12-cv-01065-APG-CWH, 2013 WL

19   2285224, at *5 (D. Nev. May 22, 2013).  Because Plaintiff failed to comply with Rule 26, the

20   burden is on Plaintiff to explain why the expert testimony and their CVs should not be excluded

21   per Rule 37.

22        At the hearing, Plaintiff failed to provide any explanation, relying instead on the

23   incorporation of the medical records.  This is not an adequate disclosure.  The Court finds that

24   Plaintiff has not adequately explained why the failure to comply with Rule 26(a)(2)(C) was

25   harmless.  Defendant's objection to Exhibits 8-9 is SUSTAINED.

26

27   _____

28   [5] Because Defendants did not provide the various documents as separate exhibits, the Court uses
     the ECF header page number.

16

### C.   Objections to witnesses

#### i.   Plaintiff's objections to witnesses

##### a.   Alicia Escamillo

Plaintiff objects to the testimony of Alicia Escamillo on the same grounds as his challenges to Exhibits A-19 and A-20.  For the reasons discussed as to those exhibits, the Court OVERRULES Plaintiff's objection.

##### b.   Custodian of records – Hayward Police and Alameda County Sheriff

Plaintiff objects to the testimony of the custodians of record for the Hayward Police and Alameda County Sheriff.  (Dkt. No. 84 at 1-2.)  This testimony concerns the arrest records for Plaintiff's arrests for being drunk in public.  Because the Court has granted Plaintiff's first motion in limine, these arrest records will be excluded, making the testimony of the custodians of record unnecessary.[6]  Plaintiff's objection is SUSTAINED.

#### ii.   Defendants' objections to witnesses

##### a.   Dr. Cardoza and Dr. Kelmenson-Chau

Defendants object to Dr. Cardoza and Dr. Kelmenson-Chau for failure to comply with Rule 26(a)(2)(C).  For the same reasons discussed as to Defendants' objections to the CVs of these expert witnesses, Defendants' objections are SUSTAINED.  This does not preclude Plaintiff from introducing Dr. Cardoza and Dr. Kelmenson-Chau as non-expert witnesses.

##### b.   Sandra Lucero, Charlie Rice, Calvin Mettler

Defendants object to Sandra Lucero, Charlie Rice, and Calvin Mettler for failure to comply with Rule 26(a)'s disclosure requirements, as none of these witnesses were disclosed in Plaintiff's initial disclosures.

With respect to Sandra Lucero, although Ms. Lucero was identified in answers to interrogatories and deposed, she was never identified as a witness regarding Plaintiff's lost wages. Defendants therefore did not question her regarding the lost wages.  The Court OVERRULES

---

[6] Even if Plaintiff's prior arrests were admissible for impeachment purposes, the records themselves would not be admissible because Plaintiff was only arrested, not convicted.  *See* Fed. R. Evid. 608 ("Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness").

1    Defendants' objection to Ms. Lucero except as to lost wages; Ms. Lucero is not to testify about

2    Plaintiff's lost wages.

3         As to Charlie Rice, Plaintiff identified Mr. Rice as being at the Pyramid House on the night

4    of the incident, and during his deposition discussed Mr. Rice in the context of being Plaintiff's

5    employer and lost wages.  The Court therefore OVERRULES Defendants' objection to Mr. Rice.

6         With respect to Calvin Mettler, however, the Court concludes that Plaintiff's failure to

7    disclose was harmless because Defendants themselves disclosed Mr. Mettler in their initial

8    disclosures.  (Defendants' Evidentiary Objections at 6.)  Therefore, Defendants clearly knew of

9    Mr. Mettler and were not prejudiced by Plaintiff's failure to disclose him as a witness.  Defendant's

10   objection to Mr. Mettler is OVERRULED.

11        **D.    Plaintiff's objections to discovery responses**

12        First, Plaintiff objects to Defendants' use of Plaintiff's Responses to Interrogatories, Set 2,

13   Nos. 20 and 21 on the grounds that he supplemented his response on August 22, 2016.  (Dkt. No.

14   89 at 1-2.)  Interrogatory No. 20 asks Plaintiff to "[p]rovide a description (indicate race, gender,

15   approximate height, approximate weight, hair color and any other physical characteristics) of each

16   of the 'OFFICERS' who 'carried [YOU] into a concrete room with a drain on the floor and

17   slammed [YOU] to the floor' as alleged in Paragraph 11 of YOUR First Amended Complaint."

18   (Dkt. No. 88-1 at 4-5.)  Plaintiff did not identify Defendant Howe in his response until he provided

19   his August 22, 2016 supplemental response.  Similarly, Interrogatory No. 21 asks Plaintiff to

20   "[p]rovide a description (indicate race, gender, approximate height, approximate weight, hair color

21   and any other physical characteristics) of each of the 'OFFICERS' who 'proceed to hit and kick the

22   still handcuffed plaintiff [YOU], and also twisted [YOUR] ankle until it made a loud popping

23   sound' as alleged in Paragraph 11 of YOUR First Amended Complaint."  (*Id.* at 5.)  Again,

24   Plaintiff did not identify Defendant Howe in his response until August 22, 2016.

25        Plaintiff's supplemental response is not timely; Plaintiff contends that he had identified

26   Howe in his June 10, 2016 opposition to Defendant's summary judgment, yet he did not amend his

27   response to the interrogatory until two days *after* the pretrial filings were due.  At the hearing,

28   Plaintiff offered no explanation for the undue delay.  Further, the August 22, 2016 updated

response does not contain a verification, and there is no indication in the record before the Court that a verification was ever provided. (*See id.* at 7.) Plaintiff's objection is therefore OVERRULED.[7]

Second, Plaintiff objects to Defendants' use of Plaintiff's Responses to Interrogatories, Set 1, No. 14. Request No. 14 asks: "For each **felony** you have ever been convicted of, please state the year, the court, and the conviction charge." (Dkt. No. 80 at 10. [8]) Plaintiff argues this question and response is irrelevant. (Dkt. No. 89 at 2.) Because the Court is excluding the use of Plaintiff's felony convictions, as discussed above as to Plaintiff's first motion in limine, Plaintiff's objection is SUSTAINED.

Finally, Plaintiff objects to Defendants' designation of approximately 140 pages of Plaintiff's deposition testimony as needlessly cumulative. (*Id.*) The Court agrees that it would be needlessly cumulative to introduce all of the designated pages when Plaintiff will be testifying at the trial on similar matters. Courts have recognized that live testimony is generally preferable to deposition testimony. *E.g.*, *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1364 (N.D. Cal. 2007). At the hearing, the Court asked Defendants whether they intended to use all of the deposition testimony, and for what purpose. Defendants stated they would only use limited portions and snippets as necessary, mostly for impeachment purposes. The Court therefore SUSTAINS Plaintiff's objection to using the entirety of the designated deposition testimony, although this does not preclude Defendants from using limited portions.

**E.    Voir dire**

Both parties filed voir dire questions, and neither party has filed objections to the proposed voir dire. (Dkt. Nos. 71, 75.) The parties shall use the proposed voir dire attached to this order as Attachment A.

---

[7] Defendants also object to Plaintiff's use of the amended response, correctly pointing out that Plaintiff did not designate the response. (Defs.' Evidentiary Objections at 7-8.)

[8] Because Defendants did not provide the various documents as separate exhibits, the Court uses the ECF header page number.

### F.    Jury instructions

The parties filed joint jury instructions, as well as each party's proposed jury instructions. (Joint Jury Instructions, Dkt. No. 77; Plf.'s Jury Instructions, Dkt. No. 67; Defs.' Jury Instructions, Dkt. No. 79.)  The parties also filed objections to the other's proposed jury instructions.  (Plf.'s Obj. to Jury Instructions, Dkt. No. 83; Defs.' Obj. to Jury Instructions, Dkt. No. 90.)  The Court resolves the parties' disputes as shown in the jury instructions set forth in Attachment B, and as supplemented below.

First, the parties dispute the excessive force instruction regarding Defendant Ettare's arrest of Plaintiff.  (Plf.'s Jury Instructions at 1-2; Defs.' Jury Instructions at 3-4.)  The Court finds that both proposed instructions contain unnecessary information.  For example, Plaintiff proposes adding factors such as the availability of alternative methods, the practicality of a warning, and whether there was mistaken fact.  (Plf.'s Jury Instructions at 2.)  Plaintiff does not, however, explain why any of these factors are relevant in this case.  Similarly, Defendants propose adding language which explains that an officer is permitted to use reasonable force to effectuate an arrest or a detention.  (Defs.' Jury Instructions at 3-4.)  The question in this case is not whether an officer is permitted to use reasonable force, but whether the officer used *excessive* force, making these additions potentially confusing to a jury.  Defendants also object to the omission of the phrase "or in defending himself" in Plaintiff's proposed instruction, but have never suggested in any of their filings that Ettare was defending himself when he arrested Plaintiff.  (Defs.' Obj. to Jury Instructions at 3; *see also* Defs.' Trial Brief at 2-3 (describing Defendants' version of the arrest).) The Court will use the standard Ninth Circuit Model Jury Instruction, without any of the additional factors and information proposed by the parties.

Second, the parties dispute the standard for punitive damages, whether it should be preponderance of the evidence or clear and convincing evidence.  Several district courts in this Circuit have applied a preponderance of the evidence standard for § 1983 punitive damages or otherwise declined to apply a clear and convincing evidence standard.  *E.g.*, *Abudiab v. City & Cty. of S.F.*, 833 F. Supp. 2d 1168, 1181 (N.D. Cal. 2011) (applying preponderance of the evidence standard); *Adams v. Pinole Point Steel Co.*, Nos. C 92-1962 MHP, C 93-3708 MHP,

1995 WL 73088, at *5 (N.D. Cal. Feb. 10, 1995) ("The burden of proof for establishing liability for punitive damages under sections 1981 and 1983 is preponderance of the evidence"); *Williams v. City of Mesa*, No. CV-09-1511-PHX-LOA, 2011 WL 836856, at *16 (D. Ariz. Mar. 9, 2011) ("The plaintiff alleging a § 1983 claim has the burden of proving that punitive damages should be awarded by a preponderance of the evidence"); *Miller v. LaMontage*, Case No. 10-cv-702-WQH (BGS), 2012 WL 684626, at *13 (S.D. Cal. Jan. 23, 2012) (declining to apply California's clear and convincing evidence standard for recovery of punitive damages in a § 1983 case). The Ninth Circuit has not addressed the issue, although it has upheld the issuance of jury instructions that applied the preponderance of the evidence standard to § 1983 punitive damages without discussing the standard of proof. *See Dang v. Cross*, 422 F.3d 800, 807-08 (9th Cir. 2005). The Tenth Circuit has, however, has cited with approval district court cases that applied a preponderance standard to § 1983 punitive damages in concluding that a preponderance standard applied to Title VII punitive damages claims. *Karnes v. SCI Colo. Funeral Servs., Inc.*, 162 F.3d 1077, 1081 (10th Cir. 1998). In light of this persuasive authority, and the lack of case law applying a clear and convincing standard to § 1983 punitive damages, the Court will apply a preponderance of the evidence standard to the punitive damages claim. This moots Defendants' proposed jury instruction regarding clear and convincing evidence.

Third, Defendants object to Plaintiff's proposed instruction, "§ 103.11 All persons equal before the law – Individuals." (Plf.'s Jury Instructions at 3; Defs.' Objections to Jury Instructions at 5.) The Court finds this instruction unnecessary and will not give it. As explained by the Notes to this jury instruction, it is prejudicial error not to give this instruction "[w]here the plaintiff is a prisoner." Kevin F. O'Malley, et al., 3 Fed. Jury Prac. & Instr. § 103:11 (6th Ed.). Plaintiff is not a prisoner in this case. The Notes further observe that "[i]t is not error to refuse to give this instruction when the jury is told to decide the case without 'prejudice, passion or sympathy,'" an instruction that the Court is giving. (*See* Attachment B at 2 (Duty of Jury).)

Fourth, Defendants object to Plaintiff's proposed instruction, "§ 104.3 Burden of proof where some jurors have served on jury in criminal case." (Plf.'s Jury Instructions at 4; Defs.' Objections to Jury Instructions at 6.) Defendants contend that it is duplicative and confusing. The

Court disagrees that it is duplicative and confusing, as it simply explains the difference between the "proof beyond a reasonable doubt" standard and the "preponderance of the evidence" standard. The Court will therefore give the instruction, but only if the jury includes individuals who have served on a jury in a criminal case.

Fifth, Defendants object to Plaintiff's proposed instruction, "104.54 Number of witnesses," arguing it is only "appropriate if [D]efendants were calling numerous witnesses to provide cumulative evidence." (Plf.'s Jury Instructions at 5; Defs.' Objections to Jury Instructions at 7.) The Court disagrees that it is confusing, but does find it duplicative because the Court is already issuing a jury instruction which cautions that the weight of the evidence is not necessarily dependent on the number of witnesses. (*See* Attachment B at 11 (Credibility of Witnesses).) The Court will therefore not give this instruction.

Sixth, Defendants object to Plaintiff's proposed instructions regarding whether handcuffing and the failure to loosen handcuffs can constitute excessive force. (Plf.'s Jury Instructions at 6-7; Defs.' Objections to Jury Instructions at 8-10.) The Court finds these proposed instructions inappropriate. The question of whether handcuffing constitutes excessive force is a fact-specific inquiry for the jury to decide; there is no per se rule that handcuffing constitutes excessive force. *See LaLonde v. Cty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000); *Nava v. Seadler*, No. C 08-3066 PSG, 2011 WL 6936341, at *3 (N.D. Cal. Dec. 30, 2011). Giving these instructions will simply stress Plaintiff's theory, a role that the Court declines to take, particularly when Plaintiff is free to present his theory of excessive force based on tight handcuffs that were not loosened upon his request even without the jury instruction. *Compare with Nava*, 2011 WL 6936341, at *3 (declining to give handcuffing jury instructions).

Seventh, Defendants object to Plaintiff's proposed instruction, "All integral participants are equally liable." (Plf.'s Jury Instructions at 8; Defs.' Objections to Jury Instructions at 11.) The Court will not give this instruction because there is no basis for giving it in this case. Plaintiff's theory is that Defendants' participation itself rose to the level of a constitutional violation when Defendant Ettare arrested Plaintiff, in the process slamming him against a vehicle, and when Ettare and Defendant Howe beat him in the safety cell. (*See* Plaintiff's Trial Brief at 1-2, Dkt. No.

65.)  There is no suggestion that Defendants' liability arises from their participation that would be constitutional if viewed in isolation.  *Contrast with Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (applying integral participation to officers that had no physical contact with the plaintiff and did not themselves use excessive force against the plaintiff).

Finally, Defendants object to Plaintiff's proposed instruction, "When no force is necessary, any use of force is excessive."  (Plf.'s Jury Instructions at 9; Defs.' Objections to Jury Instructions at 12.)  The Court disagrees with Defendant's argument that this is a misstatement of the law.  In *Headwaters Forest Defense v. County of Humboldt*, the Ninth Circuit explained that to determine whether excessive force was applied using an objective reasonableness analysis, "the force which was applied must be balanced against the need for that force."  240 F.3d 1185, 1199 (9th Cir. 2000) (internal quotations omitted), *vacated on other grounds by* 534 U.S. 801 (2001).  It then went on to state, "Thus, where there is no need for force, *any* force used is constitutionally unreasonable."  *Id.*; *see also P.B. v. Koch*, 96 F.3d 1298, 1303 (9th Cir. 1996) ("when the force is excessive, *or used without justification* or for malicious reasons, there is a violation of substantive due process") (emphasis added and internal quotation omitted).  Thus, this instruction, when combined with Model Instruction 9.23, is an accurate statement of the law.  The Court also disagrees that the instruction is not supported by Plaintiff's claim, as Plaintiff has argued that he was not drunk at the time of his arrest, that he did not participate in the fight, and that he was compliant in prison.  (*See* Plaintiff's Trial Brief at 2, 6.)  If a jury believed Plaintiff's version of the events, they could appropriately conclude that any force would be excessive because there was no need for force.  The Court will therefore give this instruction.

## G.    Verdict form

The parties have provided separate verdict forms, and filed objections to the other parties' verdict form.  (Dkt. Nos. 74, 76, 85, 91.)  The Court resolves the parties' disputes as shown in the verdict form set forth in Attachment C, and as supplemented below.

First, the parties dispute who has the burden of showing that Plaintiff was arrested with or without probable cause.  (Plf.'s Obj. to Verdict Form at 1, Dkt. No. 85; Defs.' Obj. to Verdict Form at 1.)  The Ninth Circuit has been clear that "the plaintiff bears the burden of proof on the issue of

unlawful arrest." *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 965 (9th Cir. 2001); *see also Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008) ("Ordinarily, however, the plaintiff bears the burden of proving the absence of probable cause . . . in a Fourth Amendment false arrest case"). Plaintiff provides no authority otherwise, and has in fact stipulated to this standard of proof in the jointly submitted jury instructions. (*See* Joint Jury Instructions at 17.)

Second, Defendants object to Plaintiff's excessive force questions and the lack of a requirement that Plaintiff meet his burden of proof and the standard of unconstitutional excessive force. Requiring that Plaintiff prove by a preponderance of evidence that Defendants used excessive force is consistent with other verdict forms used by district courts in the Ninth Circuit, as well as the Ninth Circuit Model Civil Jury Instruction No. 9.23. *E.g.*, *Roshone v. Jost*, No. 2:11-CV-1331-BR, 2014 WL 668706, at *1-2 (D. Ore. Nov. 25, 2014); *Allen v. City of L.A.*, CV 10-4695-CAS (RCx), 2012 U.S. Dist. LEXIS 168247, at *2 (C.D. Cal. Nov. 19, 2012); 9th Cir. Model Civ. Jury Inst. 9.23 (2007). The Court, however, substitutes "unreasonable" for "unconstitutional," as the standard for excessive force is whether the force is "objectively reasonable" under the circumstances. This is also consistent with the parties' jointly submitted jury instructions. (*See* Joint Jury Instructions at 18.)

Third, Plaintiff objects to Defendants' request that the jury apportion fault. Defendants' proposal has the same effect as Plaintiff's, in that the apportionment is used to determine how much each Defendant is liable for, a question that Plaintiff has asked in Questions No. 3 and 5 of his verdict form. Defendants' proposal simply asks that the jury consider the total damages before dividing it by Defendant, while Plaintiff would have the jury consider each component without looking at the total. As Defendants have made no objections to Plaintiff's proposal, however, the Court will use Plaintiff's proposal.

IT IS SO ORDERED.

Dated: June 7, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge